Good morning, Your Honors. May it please the Court, Counsel, my name is Terrence Jackson. I represent Quentin Williams. We are raising three issues in this case concerning the fairness of his trial. I believe the most significant issue is the Confrontation Clause issue where the defendant was denied his rights under the Sixth Amendment Confrontation Clause. In this case, the government brought in evidence of a videotape recording of a witness. Let me ask you a question. At the trial, the actual trial, were either of the prostitutes physically present? No. No. They used the videotape. The juvenile was not there at all. She was not present. And the adult prostitute, her testimony was allowed by videotape? That is correct. And at the videotape, tell me if I've got this fact right, the defense attorney was present on the videotape and cross-examined, but there was only one day notice of the deposition and his client was in Chicago and couldn't or didn't make it down there? That is a correct summary. I'd like to elaborate somewhat on the facts, but that is a correct summary. I can give a very brief timeline which I think is essential. The two prostitutes were arrested in December of 2002. An indictment was returned in July of, excuse me, December of 2001. An indictment was returned in July of 2002 against the defendant. In November of, November 27th, a superseding indictment was returned against the defendant. However, on December 6th of 2002, the government moved to dismiss the charges against the defendant because they were unable to locate either of the two prostitute witnesses. All the charges against the defendant were dismissed. The defendant presumably went back to Chicago then. On December 17th, excuse me, on December 16th, the defendant was arrested or a warrant was filed against the defendant on a criminal complaint for money laundering on related charges. On December 17th, coincidentally, the prostitute witness, Carmese Jackson, was arrested on new prostitution charges. The next day, she was appointed an attorney. And that same day, he filed a motion to have a deposition. Now, I don't know how he got the motion filed so quickly, but amazingly, he had a motion in court the same day. Well, now, this, the adult prostitute, when she was in custody here, she got arrested. But was something else launched against her saying, like, she had an outstanding, there was some sort of failure to appear regarding either a material witness warrant or something like that? She didn't. So she couldn't get out, she couldn't get out until that was resolved, right? Yes. And they appointed counsel for her, and he filed a motion to hold the deposition. But the charges had been the same. I guess what I'm getting at there, they get her on another charge, but at this point, the government is at a juncture where they know that this person doesn't show up, all right? And so they've lodged some sort of warrant. And my understanding of the law is, you know, most of the time, you can't hold people indefinitely if there's some lesser way that you can either assure their presence or you somehow do that. So they're in a situation where, you know, they don't want her to get out again, and they want to somehow, you know, shore things up for trial. And so the question is, we know that you can do this. The question is, how much notice do you need to give? What sort of, you know, what needs to be done in terms of getting the defendant present, his lawyer present, right? And my argument is that they didn't do enough both to secure the defendant's presence under the confrontation clause, and they didn't do enough to secure her presence after this deposition. The defendant, for example, was in Chicago. He was notified by his attorney apparently on the, I believe it was the 19th. His attorney told him, like, two things, too. Right. There's this person in custody that they wanted to do. So he knows about the deposition. And he knows that there's a warrant. And he knows that there's a warrant out for his arrest. Right. So he faces, I mean, essentially if he shows up, he's surrendering on the warrant. I mean, as opposed to if he stays in Chicago, he still has a warrant out. And based on that, the government wishes the court to imply that he waived his right to be back there. And I don't think the court can reach that conclusion. I think the law requires that any waiver of a fundamental constitutional right be on much stronger grounds than that. Are you conceding that he had notice and could make it back if he wanted to? No. I don't believe he – I believe he had notice that there was a deposition. I'm conceding that. I'm conceding he had notice that – Are you conceding that he could make it to Las Vegas if he wanted to? No. I'm not conceding that because the record reflects that he was indigent. I'm conceding that if the government had made arrangements, proper arrangements to secure – What do you mean by arrangements? I think they should have – There's two parts to that. One is making sure he doesn't get busted, and the other is making sure he has a plane ticket. They should have done that. They did not do that. Should have done what? They should have made – what the government said in their response – Let's finish this. I want to know, are you saying that they have a constitutional obligation to immunize him from getting busted when he gets down there? No, I think they could have arrested him. Pardon? Arrested him. The Chicago police had arrested him on numerous occasions, and I think they could have found him if they had looked for him. I want to know why he couldn't come to Las Vegas. Because he was indigent, number one. Number two, I think there wasn't enough time. Did his lawyer say, provide me with a plane ticket, he'll be here? I heard his lawyer say something about he talked to him and he was excitable about – His lawyer did say that? Whatever that means, I don't know. His lawyer did not say provide me with a plane ticket, but the U.S. attorney did not say we will provide him a plane ticket either. His counsel said clearly that he is indigent. His counsel said that, number one, he couldn't get in touch with him after the first call. Now, based on the record we have, and I've read it over carefully several times, and I implore the court to read it carefully several times, the undisputed facts are that the defendant was contacted once by his attorney who explained to him there was this hearing. It's unclear how much the defendant understood of this. It's clear that the defendant had been told a few days before the charges were dismissed, and then a few days later he gets a call that all of a sudden they want him and he's not told how he can get to Las Vegas. It's clear that he's indigent. I don't know if anybody can make travel arrangements in one day. What day was it, incidentally? It was the 19th, he was told by his attorney, and the very next day – No, no, no. You don't – let me make my question clear. You said something in your brief about the holiday season, and I want to know what day it was. December 17th was the date that the – that Carmese Jackson was arrested. December 18th was the day that Mr. Duffy filed his motion for a deposition. December 19th was the day that Quinton Williams was contacted by Arthur Allen, the federal public defender, and December 20th, five days before Christmas, was the day of the deposition. Now, under those circumstances, I don't think there was adequate notice for the defendant to get back here, even if the defendant – even if the defendant wasn't indigent, even if he had the funds to get back, and I don't think the government established that. Do we have some kind of record to establish that he could not make it back to Las Vegas? All we have on the record, and the record is vague on this, but I think the burden is on the government based on the case law I've cited. What we have on the record, and I wasn't trial counsel, I wasn't – I wasn't either, but I tried to prepare the case, and I'm sure you have. What the record reflects is that there was a call made to him on the 19th. The government says on page 134 of the record that they would make arrangements, but they don't. There's nothing to say that anyone contacted him. This was on the 20th when they said they would. It's in the subjunctive. No one ever did contact him. Rather than continue the case, which is what I argue – what I believe the judge should have done. Are you saying that before the deposition the government said that they would make arrangements? No, on the day of the – on the day of – on the day that it happened, the 20th, I think it's on page 134 and 135 of the record, Mr. O'Connell for the government says they offer – I see it. But that's on – So this is during the deposition. That's on the day that the deposition was happening, and Mr. Allen, the federal – And what was the response there? Was there a suggestion, okay, let's put off the deposition for a day or two while the government brings him down? No, no. The deposition just went forward over objections of Mr. Allen. Where the – I don't see the objection. He objected on page 132 of the record to going forward. I believe he stated his client was indigent and didn't have the funds. Well, 132 comes before 134. That's correct. In any event – He says – He probably should have asked to continue it right then, but he didn't. But even if – even if they could have had Mr. Williams present, let's assume that Mr. Williams chose to waive his right to be present. I believe that they still failed in not having Carmese Jackson present for trial. If the government chooses to do a deposition, that does not mean that they should go forward without Carmese Jackson. It didn't mean they were consenting – Wait a minute. Crawford says that there's an exception where there has been confrontation before, such as on a retrial. And it seems to me that if Williams had actually been present for the deposition or if he waived his presence, then this would be just like a second trial after a hung jury, where Crawford makes it clear that the confrontation clause is satisfied. If you can imply a waiver, but I don't believe you can imply a waiver – Why – tell me why you can't get a waiver – Based on his – based on his actions. Counsel, tell me why you can't get a waiver where the prosecutor says on page 134, I would be happy to arrange for transportation for him here. And the defendant doesn't say, okay, I'd like the prosecutor to do that and I'd like this deposition delayed for a couple days until we have Williams here. If Mr. Williams was there and said, I don't want to be there, you can imply it. But Mr. Williams wasn't there. The fact his attorney didn't, I don't think you can hold against Mr. Williams. I cited the case of Teel v. Burden, and I would point out in that particular case, the language in that case, and I'd just like to quote that to the Court. It's in my brief, but I think it's very relevant. It said at the beginning of the trial, the State judge stated Teel was voluntarily absent because the day before, Teel had been instructed to be present and he was not. The State judge's conclusion was not based on any actual evidence. The trial judge did not hold a hearing on the matter either before or after the incident. As a trial judge admitted during a deposition, he had no earthly idea why Teel didn't show up. The fact, and this is also distinguished from the case that the government cites, Brewer v. Raines. In Brewer v. Raines, Mr. Brewer was gone for about seven months after he was told that he was not to leave the jurisdiction and he was supposed to show up. And he admitted that he knew that he was supposed to be back. In this particular case, we have a one-day time gap from the time the defendant knew to the time that he didn't show up. The government could have got this defendant here. They arrested him less than 10 or approximately 10 days later. There was basically a rush to judgment here. Counsel, before you're out of time, let me ask you a couple questions about the expert witness, Lee. I was kind of wondering just what the nature of that expertise is. We have some cases that seem to approve just that sort of testimony. And I'm wondering how you distinguish our authority. I think that they were wrongly decided. I'll frankly concede. What can we do about that? This Court, while I'm asking the Court to reconsider, it's holding, I believe. We should go on bonk? I'm asking the Court to do that because I think the prejudicial nature of Dr. Lee's testimony in this case was very great. You realize the panel has to follow Ninth Circuit precedent. I understand that. And I was hoping that if the Court found the first issue I raised in this case significant, the Court would reverse on that issue. But if the Court didn't, I think that the second issue, the flagrant nature of this expert testimony was so prejudicial, the Court would look at that. But it's particularly troubling was the prejudicial effect about the testimony of prostitutes using their, or rather pimps using their prostitutes' babies for sexual acts. And I thought that was particularly prejudicial here where there was testimony that the child prostitute, in this case, was the mother of the defendant's child. I think the jury had to be greatly prejudiced by that testimony. And especially since there's no evidence that anything like that happened in this case, to let that kind of testimony come before the jury I think had to be highly prejudicial. I'd like to reserve the rest of my time for rebuttal if that's. Thank you, counsel. Good morning. Daniel Sheest for the United States. My opponent raises the issue that the government did not make enough effort to secure the presence of the defendant in his deposition. His argument does not fairly evaluate the circumstances that were taking place at the time. Counsel, I could get to Anchorage maybe on a day's notice, December 20th, but Las Vegas, no way. From Chicago? I know the air routes a lot better from Fairbanks, Alaska, actually. Well, the last I checked, there's numerous flights into Las Vegas every day. They tend to run full around the holiday season where I live. That's not true in the rest of the country? That could be, but that's not on the record and that's not the facts. Is there any record he could make it? No. In the sense of did he actually? This was an awfully fast deposition. This woman's been in and out of jail all her life, 200 pages worth of times, according to her rap sheet. Holding her for a few days while you got him down there wouldn't be any big deal to her. Kind of sounds like you wanted to get her in and out before he got there. I don't know what the magistrate was thinking at the time that she set up for the next day. Probably thinking everybody wants their holidays. Could be. But what I do know is that when the trial took place in March, the trial judge had the opportunity to look backwards and decide whether the deposition was a violation of the Confrontation Clause. I don't see where that's worth anything at all. Well, I do. The main thing the trial judge did not have was the Crawford case, of course. Have you read Crawford, the recent Supreme Court decision about the Confrontation Clause? I have, and I've read numerous commentaries and guidance on it as well. Well, Crawford says there are two parts of it. One is the cross-examination, which you had here, except to the extent that Williams couldn't talk to his lawyer. And the other is the face-to-face confrontation, which you did not have here. And Crawford says that that face-to-face confrontation is critical. Crawford. So I don't see how you can avoid dealing with a very serious Crawford problem. Crawford provides that the defendant have an opportunity to cross-examine. Crawford does not abrogate Rule 15. Rule 15 stands in the face of Crawford. The Supreme Court cases that still are on point are California v. Green, 1970 decision. Give us your best argument of the facts that are in the record that would support your position that he had that opportunity. Facts in the record. And I'm going to take the facts from the trial judge's perspective in March, because the harm occurs when the deposition is admitted into trial. So we have to look at what the judge saw at the time he decided to admit that video deposition. He knew that the magistrate judge on December 19th ordered the defense attorney and the government attorney to contact the defendant and see if he wanted to appear in person at the deposition the next day. What the judge finds out, the magistrate judge finds out, is the next morning when she holds the hearing, she asks both parties, the government and the defense, did you contact the defendant and tell him he has the opportunity to be here? The government said it couldn't reach him, and the defense said, as you've noted before, Your Honor, quite frankly, my client was rather excitable. I guess for lack of a better term, when I brought him up to date on the developments and made him aware that there was a new warrant out for him, the implication clear is that when he heard about the new warrant, he chose not to be there. Now, we know that. Was it in the record that he told the defendant that this deposition was going to proceed? With or without him? Yes, sir. I mean, what specifically was in the record about what did defendant's lawyer tell him was happening? He told him he had a warrant out, and we know he said that he was excitable. What did he tell him that this proceeding was before the court? Yes. On this excerpt of record, page 128, the defense attorney said, I advised him of the situation that had occurred yesterday. Yesterday was the judge ordering the video deposition, and Mr. Williams, of course, wishes to be present for the deposition. The defense attorney explained further that when he told him about it, the defendant became excitable. Why does excitable mean a waiver? Excuse me? Why does excitable mean a waiver? Why does it mean a waiver? You seem to be inferring from the fact that the defendant became excitable on the telephone that he would not come, that he refused to come. I don't understand why that instance is justifiable. It's justifiable from the totality of the circumstances, and this is why I'm taking you to the perspective of the trial judge. The trial judge knows that the defendant is told of the hearing. He's told he can be present. He's told that there's a warrant out for him, and the defendant gets excitable. The defense attorney does not tell the judge at any time, even up to the trial, that immediately after that telephone conversation with the defendant, did he ever heard from him again. He tried to reach him the next day. What discussion was it? There's obviously some evidence in the record about him being indigent. What was the discussion specifically? What were the facts before the court at that time? Well, the two facts are that the defendant was represented by the federal public defender, and number two, between I won't be able to cite you the exact page, but it's between 124 and 127, the defense attorney says my client's indigent. Okay. He does not say that. Was there ever a request from defense counsel for someone to pay for his client to come to the deposition? No, there wasn't. Was there ever an offer prior to the deposition by the government to pay for it? You mean prior to that morning? Yes. Page 135? No. Okay. Counsel, on page 128, the defense counsel says to the magistrate, I advise him of the situation that had occurred yesterday. Mr. Williams, of course, wishes to be present for the deposition. Obviously could not from yesterday to today, particularly noting the holiday season, his lack of funds had no way to be here today. Now, I read those words, Mr. Williams, of course, wishes to be present, as meaning that Mr. Williams wishes to be present. But you seem to want me to infer that Mr. Williams wished to be absent from the words Mr. Williams wished to be present, and I don't get it. Your Honor, your actions speak louder than your words. In this case, I'm trying to have you focus on the actions. Your actions in not showing up the next day? I've been looking at his actions and what he did when he hung up with a defense attorney on that, the day before the 19th. The defense attorney reports to the court that he's excitable. Now, here's the fact. Here's the fact. Ridiculous to me. What you're saying strikes me as utterly ridiculous. I'm thinking of an actual human being. He thinks that the charges against him have been dismissed. He gets a call from his lawyer saying, this thing's still going, and we're having a deposition of the critical witness against you tomorrow. Can you be here? And you're saying, well, he doesn't show up. That shows he doesn't want to be, even though his lawyer says he wants to be. And his lawyer is saying, he's thinking, geez, it's the holidays. I have no money. I have no reservation. I probably can't get a reservation because of the holidays. It's in one day. What am I going to do? Of course he's excitable. I don't see where anything follows from anything else, though, in the argument. If I made that simplistic argument to you, then I would say my argument's ridiculous. I thought you did. No. I'm trying to explain to you the entire picture, and each time I do, you come back to me with that question. The entire picture is this. When he hung up the phone from his defense attorney on the 19th, that phone conversation was never complete. The defense attorney never finished that conversation about all the details. Later that day, the defendant's absence of any communication with his attorney, or even the next morning, there was no contact of, hey, how can I get there? What can we do? Who's going to pay my flight? Instead, the phone went dead, and there was absolutely no contact with his attorney until he was arrested January 2nd. Now, it seems to me that if he wanted to be here, as opposed to wanting to hide from the law so that he wasn't arrested, he would have had conversations with his attorney of, Mr. Attorney, I have no money. How am I going to get there? And if those conversations took place, the defense attorney would have said to the court, look, judge, who's going to pay for it? Can we get a ticket? The government is required to, under Rule 15, to pay for his travel. The absence of that conversation, the absence of any report by the defense attorney, is indicative. And the only contact by the defendant and his attorney takes place after his arrest on January 2nd. That length of time, that absence, is his actions that gave the court a reasonable basis to infer that he chose not to be present. Now, your argument would be good, and I would be making a very simplistic and unreasonable argument, if the defendant had called up his attorney and said, you know what, I really want to be there, but help me with funds. None of that took place. And so when the judge gets to March 31st and he hears nothing from the defense attorney about any of those normal, reasonable conversations that are indicative of an attempt to get here, the judge has an actual basis to draw a conclusion. Can we consider that he didn't call his attorney until January 2nd, or do we just have to really look at what happened up until the 20th of December? Because you're essentially pulling in the fact that he didn't call until January 2nd to give meaning to what occurred from, say, the 18th to the 20th. When, and I answer that question with this, when does the constitutional confrontation issue come to fruition? Not necessarily when the deposition is taken, but when that is offered against the defendant at a trial. If it was never offered at trial, there would have been no harm, no foul. So you have to look at the trial judge's decision. At this point in time, am I going to admit it? At that time, the issue becomes ripe, the constitutional confrontation issue. So the trial judge is the one who has to make the finding of the admissibility of the evidence, and his admissibility has to turn on a confrontation clause analysis. And in the excerpts of records from about 187. So essentially you're saying that we can analyze the waiver issue, whether the defendant waived by the fact that he didn't contact his attorney until after he was arrested January 2nd. I think you have to, because you have to look at the time where the harm takes place. And I think there's another way to look at it. A defense attorney wants you to look at the middle district. I don't understand that. It seems to me the depositions already happened. There's just no point in calling his lawyer saying, how can I get to it? It's already over. What's more, it's Christmas, and then New Year's, probably not going to be practical to get hold of his attorney. We're having to look at a state of mind. We're having to look at the defendant's intent. And so we have to look at the totality of the circumstances. We can't limit it to one day. We have to look on what we know as a pattern of activity from that moment he was excitable with his attorney until the time that he was arrested. Did he have any contact with his attorney? I don't think that you can limit intent or your analysis of intent to a 24-hour period. Because what happens if one of the defendants doesn't? So say if on December 25th, if he had called his lawyer and said, I wish you would have offered me, then co-counsel could then, you know, counsel for the appellant could make the argument, well, that bolsters the fact that he wanted to be there. That would be a reasonable argument. We don't have that fact. But let's give you another fact. That he could manage to get to his lawyer on Christmas Day. Well, let's suppose that on Christmas Day, he's in Rio de Janeiro. Can we infer from his presence there that he's hiding from the law, that he didn't want to show up for his deposition? If you had him in Rio, I think you could infer he didn't care to be around. But he's in Chicago. And I think you can infer not merely that he's in Chicago, but his absence of any contact with his attorney after the time he was notified of that call and told about the next day. If he wanted to be there the next day, he could easily have picked up that phone. But it's all over. What's he going to be doing, bothering his lawyer over the Christmas holidays, over something that's water over the dam? Within that 24-hour period, from the time that his defense attorney spoke with him, there's nothing to indicate that he called his attorney back and said, hey, what type of travel arrangements can we make? When you look at the defense counsel's reporting to the court about him being excited, I direct your attention back to the question of the court just before. What page? I'm on 129, excerpt of record. And I think the court's. I got it. The court's. That's where the defense lawyer says it only took him one phone call to contact his client? No, I'm on the top of 129, which says the court said. And yesterday I mentioned. An excerpt of record 129? It is that page. It's just at the top. Okay. And yesterday I mentioned that if Mr. Williams was unable to travel on short notice, that the court would make accommodations to have him appear either via teleconferencing or a telephone conference call. Did you discuss that eventuality or possibility with Mr. Williams? And then comes that answer that we've discussed. Your Honor, quite frankly, I didn't. My client was rather excitable, I guess, for lack of a better term, when I brought him up to date on the developments. When you. I read that, and I think it's a reasonable inference to read in there, that because of the defendant's excitability, his reaction to being informed of his arrest or of the pending warrant out for him that this case was being renewed, that his attorney, that the defendant cut short the conversation. That's a lot of inferring. So you're inferring basically that Williams hung up on his lawyer, even though the record doesn't say he hung up on his lawyer. All it says is he was excitable. I'm inferring that because of the defendant's state of mind, that they were never able to complete a conversation. Does it say he hung up on his lawyer? I didn't say he hung up on his lawyer. Does it say that they couldn't complete their conversation? I think that's, I know that's a reasonable inference. Does it say that? No, not in those direct words. Okay, so you're inferring it because his client was excitable, and the lawyer says he didn't talk about it with him. Is that the support for your inference? Yes, he said. Okay, I got it. Okay. Let me ask you about something else before you run out of time. I was concerned about Lee's testimony. It looked like you didn't have the 15-year-old prostitute at the trial, so instead you've got a woman who talks to a lot of prostitutes who testified, this is the way 15-year-old prostitutes or young ones are in general, so that the jury can draw inferences about this one, such as that they're in this extremely dependent state on their pimp, they treat their pimp as though he was their father, their pimps pimp out their own babies by these prostitutes for fellatio. And even though none of this, as far as we know, ever happened because no one ever got any testimony from the 15-year-old, that's what the jury heard about what's probably true of the 15-year-old. Why is that helpful to the jury and, therefore, admissible? I did not read her testimony as being limited to a 15-year-old, but more to young prostitutes. Ms. Camise Jackson, the person who testified, was 21 or 22, somewhere in that age, not far above minor. Ms. Lee's testimony. I think he was talking about juvenile prostitutes. Lee was talking about juvenile prostitutes. Probably at some point there, what she was talking about generally, though, was the relationship between prostitutes and pimps and why prostitutes have a tendency when confronted initially by law enforcement to lie for the pimp. And so she was trying to explain or give the jury an understanding of the relationship, of the mindset, and I don't believe that was true. Do you know that that understanding has anything to do with the actual 15-year-old prostitute that Williams was pimping? Williams, in this case, she wasn't charged with just pimping one prostitute. She was charged with pimping two. Lee's testimony wasn't limited to that. The fellatio statement by her was a single statement. It was gratuitously offered. It was not objected to by the defense, and the trial went on. When you look at Ms. Lee's testimony as a whole, her testimony was trying to explain why witnesses such as Ms. Jackson would provide false statements about their pimp. It strikes me that we have case law that says that's admissible, but it seems like a predicate for it's admissible would be you put the 15-year-old prostitute on the witness stand and she says, oh, he never pimped me out, he never did any of these things, never did any of these bad things. Then you put Lee on the stand and she says here's why these young prostitutes lie and give testimony that is exculpatory of their pimps. It's because they have this relationship and they treat them like their fathers and all this stuff that Lee said. But since the 15-year-old never testified, I don't see where you have a predicate for putting on a witness to say that these 15-year-old prostitutes or juvenile prostitutes are so protective of their pimps. I didn't review the record from that light as to what came in with respect to the minor. Wasn't her testimony from the grand jury read in and it wasn't objected and it's not before us now? I was going to say that I believe her testimony came in through other means as opposed to her testimony directly. And there wasn't objection for whatever reason. I don't know and it's not before this court now. So they did hear some testimony about what she said. That's my basis, but I cannot quote you the page where it's from. I believe that's how it came in through there. Thank you, counsel. Thank you. Thank you. The defendant in this case did not waive his right because he was in Chicago. He did not have the funds to come back. And he did not really understand, I think, when he spoke to his counsel, the importance of coming back here. I think the record is clear that counsel objected at all times to going forward. Now, counsel may not have made a good enough record in demanding that the government issue travel passes for Mr. Williams. But the government did not take the steps to arrest him and bring him back or issue travel passes. I think there was a rush to judgment here in having the deposition. And I can only infer that one or two things happened, either as the court suggested they wanted to get this case over with before the holiday or that some kind of negotiation was made whereby the only way that the witness, Carmese Jackson, would testify was a negotiation whereby she was going to be released after she testified. It doesn't make any sense otherwise because we really can't we can't really infer either of those, can we? Well, we can make that kind of inference as much as counsel for the government can make an inference that the defendant chose not to come back because he was going to be arrested. The same – I think there's as much reason to make the inference – that inference as the inference the government's been making. But I may be wrong. I'm simply suggesting that there was no rush to do the deposition at this time. I think in looking at Crawford, the language in Crawford talks about face-to-face confrontation, but it also puts the confrontation clause, I think, on a very high level. It suggests that these – and the government states that Rule 15 depositions are not overruled by Crawford, and I agree with that. But I think depositions, especially when a defendant isn't there, should be as a last resort. They should be used for situations where there's a real need, and if the government uses them, they should be held to a strict standard. Oh, before you run out of time, I may be mixed up on this. Did Lee testify at the trial? Dr. Lee? That's the only Lee involved, isn't it? Yes. Yes, she did. She did testify at the trial. Yes. We – And was it objected to? Yes, there was a motion in limine beforehand by the Federal Public Defender, and it was objected to. And the judge ruled against that motion in limine. That's part of the record. And she testified at trial. Thank you. Speaking about why Mr. Williams may not have had good communication with this attorney, I don't know the reason for that. I know that he did eventually fire his attorney, so there wasn't a good relationship between him and Mr. Allen. That may have been one reason why he didn't call Mr. Allen back after this deposition, one reason why he was excitable. I don't think you can imply from the fact that he didn't call Mr. Allen back after the December 19th phone call that he did not want to be there. Mr. Allen made clear that he wanted to be present for the deposition. And I think for counsel to ask the court to infer he didn't want to be, as the court has pointed out, is incorrect. If the court has no other questions, I would submit it. Thank you, counsel. United States v. Williams is submitted. Next is Harvest v. Castro. Thank you.
judges: Oakes , Kleinfeld, Callahan